ELIZABETH E. BAKER, Respondent, *v.* THE UNION MUTUAL LIFE INSURANCE COMPANY, OF MAINE, Appellant.

There can be no estoppel *in pais* in behalf of one having full knowledge of all the facts. And this principle extends to the case of the party's agent, having such knowledge when negotiating the contract out of which the estoppel is claimed to arise.

An acknowledgment on a policy of life insurance of so much money received in cash, is between the immediate parties to the contract, but an admission, and liable to be contradicted.

And where the husband procures a policy of insurance on his own life, but payable to his wife, and the contract is on its face with her as the "assured," if she adopts such policy and sues upon it, her claim must be subject to such stipulations and conditions as were made by the husband on entering into the contract for her.

Accordingly, where notes are given by him as a substitute for a cash payment on a policy of insurance, which notes contain a provision, that, if not paid at maturity, the policy shall become void, they must be paid when due, or the policy will be forfeited.

And this is so, notwithstanding it is made payable to the wife, and acknowledges the receipt in cash of the amount for which the notes were given, and it appears that the wife had no knowledge of the notes or their condition.

(Argued December 13th, 1870; decided January 24th, 1871.)

APPEAL from a judgment ordered by the General Term of the Superior Court of the city of New York, on a verdict of a jury, taken subject to the opinion of the court.

The action was upon a policy of insurance of $10,000 upon the life of Gookin Baker, issued upon his application, for the sole and separate use and benefit of his wife, the present plaintiff, and reciting an agreement by him to pay the annual premium on a day named, and the payment of the first annual premium. The agreement to insure is declared to be made in consideration of said first payment having been made, and of the provisions in the policy for future payments of premiums. The policy was upon the condition that, if any annual premium was not fully paid, with the interest due thereon, on the days and in the manner provided for, the policy should be null and void and wholly forfeited. By a clause in the margin of the policy, and constituting a part of it, marked "special agreement," it was expressly understood and agreed that the policy was accepted upon the condition, that if, at any time, any note, check or draft other than the annual premium note for one-half of the annual premium should be given in payment or part payment of any premium then due or to become due, and such note, check or

draft should not be paid according to the provisions thereof, then the policy should become immediately void, and the insurers released from all obligations under it.

The agreement to pay in the policy was in form directly with the wife as the assured, in these words, " And the said company do hereby promise and agree with the said assured, her executors, etc., well and truly to pay the sum insured," etc.

Indorsed upon the policy were memoranda, signed by the agent, indicating that the first annual premium had been paid, one-half cash and the other half by note.

There was no cash paid; but three notes, each for one-third of the cash half of the premium, were given by Gookin Baker, payable respectively in three, six and nine months from date, without grace, and each contained this clause: " Being in part of premium on policy number 13,142, issued by said company, which policy shall become immediately void and forfeit to said company, if this note is not paid at maturity." Gookin Baker failed to pay the first note when it became due, and when called upon for payment by the defendant's agent, said he could not pay it; that he was sorry, but would pay as soon as he could, and on a subsequent call by the agent, he said he must wait on him for it. He died without paying the note, and before the other notes became due.

On the trial the plaintiff testified that a few days after the date of the policy her husband handed it to her; that she saw the receipt on the policy; that he showed it to her; that she did not know until after the death but that the premium had been paid.

No questions were submitted to the jury, or decisions made, or exceptions taken at the trial ; but a general verdict was rendered for the plaintiff, subject to the opinion of the court at General Term. The General Term ordered judgment for the plaintiff on the verdict. JONES, J. dissenting.

*Samuel Hand,* for the appellant, that nothing amounts to an estoppel *in pais* unless some one is influenced thereby to change his position so that he will be prejudiced, cited 33

Barb., 176; 32 id., 284; 31 id., 213; 11 Allen, 349; 42 N.
Y., 443. That a receipt expressed to be for cash does not
estop a party from showing that it was in fact given for notes,
and that no cash was paid. (37 N. Y., 312; 3 Bosw., 497;
11 Barb., 36; 3 Comst., 168; 5 Johns., 68; 2 Hall, 547; 26
N. Y., 460.) That assignee, creditor, mortgagee, etc., are
bound by acts and representations of the party contracting
the insurance. (17 N. Y., 391, 394; id., 401; 19 id., 179.)
That a principal cannot take the benefit of a contract made
by an agent without adopting the instrumentalities (notes) by
which the agent made it. (31 N. Y., 611, 619; 1 Story R., 57; 2
Hill, 451; 32 Barb., 527; 1 Carr. & P., 360; 5 Bing., 508; 23
Wend., 268; *Pitt* v. *Berkshire Ins. Co.* (100 Mass., 500.)
That principal is presumed to have the knowledge of his
agent. (42 Barb., 317–319; 8 Bosw., 1; 34 N. Y., 27.) That
the notes in this case are not to be regarded as payment.
(38 N.Y., 289; 9 B. & C., 449; 1 Cow., 359; 7 Abb., 259; 1
Cow., 290; 4 Comst., 312; 4 Campb., 251.) That the
demand of payment of a note is not a waiver of its condition,
and if it were, the agent had no power to waive a forfeiture
and reinstate a forfeited contract. (8 Bosw., 597; 3 Hill, 161;
7 Hill, 48; also 1 Rob., 561; 11 Paige, 547; 3 Rob., 232.)

*E. More,* for the respondent, that the acknowledgment
in the policy of the receipt of cash, was an agreement not to
set up non-payment of the notes as a forfeiture, cited 25
Barb., 190; 20 id., 470; 26 N. Y., 462; 49 Ill., 180; also
18 N. Y., 393; 3 Pick., 44; 2 Campb., 344; 30 N. Y., 541;
6 Ad. & Ell., 475; 3 Hill, 215; 17 N. Y., 391; 29 id., 195;
1 Den., 510; 26 N. Y., 460.)

ALLEN, J. The insurance was effected by the husband for
the benefit of his wife, and as a provision for her in case of
his death. He was the party contracting with the defendants,
and the consideration for the agreement to insure proceeded
from him, not from the wife. The statutes of this State
authorize a married woman to insure the life of her husband

for her own benefit, and declare that the insurance shall be payable to her free from the claims of the representatives and creditors of her husband; but the exemption is restricted to policies upon which the annual premium paid from the funds or property of the husband shall not exceed $300. (Laws of 1840, chap. 80; Laws of 1858, chap. 187.) But the plaintiff had an interest in the life of her husband, and an insurance procured by him for her benefit is good at common law. The policy would not be void as a gaming policy. This policy does not purport to have been effected or procured by the wife or at her instance. The deceased had an insurable interest in his own life, and could lawfully insure for his own benefit or in favor of any one having an interest in his life, as wife, child or creditor, and could secure the insurance to the party intended to be benefited either by taking a policy, naming such intended beneficiary, or by taking a policy payable to himself or his representatives, and transferring it. (1 Phil. on Ins., § 79; *Lord* v. *Dall*, 12 Mass., 115.)

In this case the husband agreed for the insurance, and caused his wife to be named as the beneficiary in the policy. It was, nevertheless, a contract with the husband, and the terms and conditions to which he assented attach to and qualify the policy, and determine the liability of the insurers.

As between the immediate parties to the contract, the acknowledgment of the receipt of the first annual premium embodied in and indorsed on the policy is but an admission, and liable to be contradicted. It is simply evidence of the fact of payment, but not conclusive. (*Sheldon* v. *Atlantic Fire and Marine Insurance Company*, 26 N. Y., 460; *Insurance Company of Pennsylvania* v. *Smith*, 3 Wharton, 520.) There is nothing in principle to take contracts of insurance out of the rule which governs and controls all other contracts, even the most solemn. The clause in a deed acknowledging the receipt of the consideration of the conveyance, is open to explanation. (*McCrea* v. *Purmort*, 16 W. R., 460.) The evidence in explanation of the receipt here was not to show that the contract was originally void

for want of consideration, but to show in what the consideration in fact consisted, and that the policy had become void for conditions broken.

The evidence in explanation of the receipt was given without objection, and was clearly admissible for the purpose for which it was offered. The policy and the notes given at the same time for the cash premium were part of the same transaction, and together made the contract of the parties. They should be read together, if necessary, to ascertain the minds and agreement of the parties. But they speak the same language, and the same condition is embraced in each. The policy accepted and held by the assured, and the notes taken and held by the insurers, express the condition in the same terms, and the language is explicit and incapable of an interpretation which shall vary the literal reading of the clause. In so many words, the parties have agreed that, upon failure to pay the notes at maturity, the policy shall become immediately void, and the insurers shall be released from all obligations under it. The contingency has happened, and the result dictated by the contract necessarily follows; and courts cannot release parties from their own contracts fairly made, or make new contracts for them. *Pitt* v. *Berkshire Life Insurance Company* (100 Mass., 500), is, in all its essentials, the same as the case at bar; and the court there held, and for reasons entirely conclusive, that the policy was forfeited by the non-payment of the note, and that no recovery could be had upon it.

The case will not be changed, if the policy is regarded as having been procured by the plaintiff, and as the result of an agreement made between her and the defendants. The husband of the plaintiff was the actor in the transaction, and represented the plaintiff; and, claiming the benefit of his acts, and of the policy procured by his agency, she necessarily ratifies and affirms the contract as it was made, with all its terms and conditions. She adopts the acts of the agent, and makes them her own. (*Elwell* v. *Chamberlain*, 31 N. Y., 611; *Bennett* v. *Judson*, 21 id., 238.) If the agent exceeds or trans-

gresses his authority, the principal may repudiate his acts altogether, but he cannot affirm in part and repudiate in part; take the benefit of the favorable parts of a contract, and reject the residue.

There is no question of estoppel *in pais* in the case. None was found by the jury, and there was no evidence upon which it could have been predicated. There can be no estoppel in behalf of one having full knowledge of all the facts; and as the payment of the premium by a note, with conditions affecting the policy, instead of in cash, was the act of the plaintiff's agent, and as the principal is chargeable with knowledge of the act of the agent, and notice to the agent is notice to the principal, it follows that the defendants are not estopped from alleging the truth of the transaction as against the plaintiff. (Dunlap's Paley on Agency, 261; *Hutchins* v. *Hubbard*, 34 N. Y., 24; *Lawrence* v. *Selden*, 1 Seld., 401; *Plumb* v. *Cattaraugus Ins. Co.*, 18 N. Y., 394; Story on Agency, § 140.) An estoppel *in pais* is well defined by COWEN, J., in *Dezell* v. *Odell* (3 Hill, 219), as an admission or statement by one individual intended to influence the conduct of another with whom he is dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the party making the admission or statement be cut off from the power of retraction. This is the substance of an estoppel *in pais*. (*Reynolds* v. *Lounsbury*, 6 Hill, 534; *Andrews* v. *Lyons*, 11 Allen, 349; *Howard* v. *Hudson*, 2 El. and Bl., 10.) In such a case, it would be against good conscience, and a fraud, to deny the truth of the admission or statement thus made and acted upon; and this is the point upon which the question of estoppel turns. (*Dewey* v. *Field*, 4 Met., 381.)

Every element of an estoppel is wanting here. The defendants by their agent, or otherwise, made no statement or representation to influence the action of the plaintiff, or which could have been supposed would influence her conduct in any respect, and there was no evidence tending to show that she was influenced by the acknowledgment of the

receipt of the premium, or that she could or would have paid the premium at any time, or under any circumstances.

Neither was there any waiver of the condition of the policy, or the notes.

An unsuccessful demand of payment could not be construed into an abandonment and waiver of any of the terms and conditions of the note, or policy, or as an alteration of the contract in any particular. The same fact existed in *Pitt* v. *Berkshire Life Ins. Co. (supra)*, but was not deemed important, or as affecting the rights of the parties. The court below upon the case, should have given judgment for the defendant, and this court may give the judgment which that court should have given.

The judgment should be reversed, and judgment for the defendant on the verdict with costs should be given.

All the judges concurring judgment reversed, and judgment ordered for the defendant.