UNITED STATES MORTGAGE AND TRUST COMPANY, as Administrator, etc., of EDWIN D. RUGGLES, Deceased, Appellant, Respondent, *v.* MARY B. RUGGLES and Another, Respondents, Appellants.*

First Department, March 17, 1931.

* Revg. 137 Misc. 895.

*Carroll G. Walter* of counsel [*Patterson, Eagle, Greenough & Day,* attorneys], for the plaintiff.

*Hiram Thomas* of counsel [*George W. Morgan* with him on the brief; *Breed, Abbott & Morgan,* attorneys], for the defendant Mary B. Ruggles.

*Edwin F. Valentine* of counsel [*Valentine & Chichester,* attorneys], for the defendant Northwestern Mutual Life Insurance Company.

FINCH, J. From the judgment of the Special Term in favor of plaintiff and against both defendants rendered upon a new trial ordered by this court following the former appeal (*United States Mortgage & Trust Co.* v. *Ruggles,* 224 App. Div. 504), defendants appeal. Plaintiff also cross-appeals, claiming a greater sum than that awarded.

Plaintiff, as administrator with the will annexed of Edwin D. Ruggles, deceased, sues the widow of decedent and the defendant insurance company, pursuant to section 52 of the Domestic Relations Law, to recover for the benefit of the creditors of decedent such portion of the proceeds of insurance policies on the life of the husband, payable to the wife, as was purchased by annual premiums paid out by the husband in excess of $500 per annum.

Upon the first trial at Special Term judgment was rendered for both defendants dismissing the complaint on the merits, since the insurance contracts herein were made in Ohio, then the residence of Mr. and Mrs. Ruggles, and were governed by the law of that State, under which the proceeds were the separate property of the widow. The learned court at Special Term, therefore, held they could not be reached by creditors of the husband, and that section 52 of the Domestic Relations Law of this State could not constitutionally be applied to these insurance contracts or their proceeds.

Upon appeal this court, by a vote of three to two, reversed that judgment and ordered a new trial. A majority of this court held that the plaintiff was not entitled to recover any part of the insurance money purchased by premiums paid while Mr. and Mrs. Ruggles were residents of Ohio, but was entitled to recover so much of the insurance money as was purchased by premiums in excess of $500 a year paid after they became residents of New York State in 1923, and about three years before the death of Mr. Ruggles. Mr. Justice O'MALLEY, with whom Presiding Justice DOWLING concurred, held that section 52 of the Domestic Relations Law could not constitutionally be applied to these insurance contracts,

since they were, and continued to be, Ohio contracts. Following the new trial, at which the court endeavored to apportion the proceeds of the policies so as to set apart so much of the insurance moneys as was purchased by premiums in excess of $500 a year paid after Mr. and Mrs. Ruggles became residents of New York, both parties now appeal with respect to the amount of the award.

In addition, defendants claim further to be entitled to a dismissal of the complaint by reason of the holding of the Court of Appeals, since the former appeal in this court, that the provisions of section 52 of the Domestic Relations Law, upon which this action, as noted, is based, had been repealed by section 55-a of the Insurance Law, as added by chapter 468 of the Laws of 1927. (*Chatham Phenix National Bank* v. *Crosney,* 251 N. Y. 189.) If this latter question is decided in favor of the defendants and if section 55-a of the Insurance Law applies, the judgment must be reversed and the complaint dismissed. We pass, therefore, at once to a consideration of these questions.

Upon the former appeal to this court the only question considered was whether section 52 of the Domestic Relations Law could be constitutionally applied to these insurance contracts. It must have been assumed at that time, and rightly too, that section 52 of the Domestic Relations Law applied, if constitutionally applicable, since this court had held that section 55-a of the Insurance Law had not repealed section 52 of the Domestic Relations Law. (*Chatham Phenix National Bank & Trust Co.* v. *Crosney,* 224 App. Div. 58.) So far as the constitutionality of the question is concerned, this court is bound by its previous decision, which has become the law of the case, preventing in the orderly administration of justice any mere change of opinion on the part of this court. The plaintiff urges that such principle likewise applies to the assumption by this court that section 55-a of the Insurance Law had not repealed section 52 of the Domestic Relations Law, notwithstanding the subsequent reversal by the Court of Appeals of *Chatham Phenix National Bank* v. *Crosney* (251 N. Y. 189), which at the time of the previous appeal in the case at bar had not been decided. In so urging, the plaintiff, however, overlooks a clear distinction between a mere change of opinion on the part of this court and a case where the Court of Appeals has finally definitely settled the question, making the overruling of this court only a matter of course upon the appeal to the Court of Appeals. In such a case, the Court of Appeals having decided that a decision upon which this court formerly relied was erroneous, this court should be guided accordingly upon a second appeal and reverse its previous holding, rather than compel the parties to undergo the loss of time and expense

incidental to an appeal to the Court of Appeals, which could only result in the reversal of a judgment in favor of the plaintiff in so far as this question is concerned. (*Hornstein* v. *Podwitz*, 254 N. Y. 443.) So far, therefore, as the constitutional question is concerned, that question not having been passed upon by the Court of Appeals, this court is bound by its previous decision, even assuming that there should exist a change of opinion on the part of this court on that question. But upon the question whether section 55-a of the Insurance Law overrules section 52 of the Domestic Relations Law, the Court of Appeals, subsequent to the time of the first appeal to this court in the case at bar, having squarely held, though in another case, that section 55-a of the Insurance Law had repealed section 52 of the Domestic Relations Law, the duty of this court is plain, namely, to reverse its previous holding rather than compel the parties to appeal to the Court of Appeals.

Assuming, however, that this court should reverse its previous ruling as to the repeal of section 52 of the Domestic Relations Law by the enactment of section 55-a of the Insurance Law, the plaintiff still urges that judgment should be given in its favor, for the reason that in the case at bar the death of the insured had occurred and the insurance had been paid to the assured and this action commenced and at issue prior to the enactment of section 55-a of the Insurance Law, whereas in the case of *Chatham Phenix National Bank* v. *Crosney* (251 N. Y. 189) the insured had not died until after the enactment of section 55-a of the Insurance Law. We are thus brought to consider whether under the facts in the case at bar the plaintiff acquired rights under section 52 of the Domestic Relations Law which were unaffected by the repeal of section 52 through the enactment of section 55-a of the Insurance Law. At the outset it is to be noted that the rights accorded to creditors of the decedent under section 52 of the Domestic Relations Law were based solely upon statute and were an arbitrary creation of rights due to this legislative grant. At the most the amount taken from the estate of the decedent was the amount of the annual premiums with interest, and if such amount was deducted from the amount of the insurance and restored to the estate, as provided by section 55-a of the Insurance Law, an exact return would be made to the estate for the creditors. The rights in these policies, having thus been given by a legislative grant, cannot be said to be vested in the creditors until they have been established by a final decree of a court of equity. (*Kittel* v. *Domeyer*, 175 N. Y. 205; *Matter of Thompson*, 184 id. 36.) In denying a motion for reargument in the *Thompson Case* (185 N. Y. 574), the court said: " There is no inconsistency between our decision in this case and that made

in *Kittel* v. *Domeyer* (175 N. Y. 205). * * * We followed that decision and made it the basis of our judgment in the case before us as to the rights of creditors to the excess of insurance and the basis upon which they rest, namely, legislative grant. We held, as we had held before, that such insurance moneys are not general assets of the estate but constitute a special fund created by statute for a special purpose, to be applied on the claims of creditors only after a decree in a court of equity."

Even assuming that the creditors had a lien upon the proceeds of the policy, such lien was purely a statutory grant and could be taken away by the Legislature which had granted it at any time before the lien was reduced to judgment or decree. In *Watson* v. *N. Y. Central R. R. Co.* (47 N. Y. 157), in discussing the rights of a judgment creditor to a sale of the land of a judgment debtor under execution, pursuant to statute, the court said (at p. 162): " But a judgment creditor of an owner has no estate or proprietary interest in the land. He stands wholly upon the law, which gives him a remedy for the collection of his debt by a sale of the land under execution, in case sufficient personal property of the debtor should not be found. This remedy is not secured by contract, but is purely statutory, and in aid of it acts have been passed, from time to time, authorizing a sale of the land which the debtor owned at the time of the recovery or docketing of the judgment, or at any subsequent period, and making the judgment a lien upon the land. * * *.

" It is clearly within the power of the Legislature to abolish the lien of all judgments * * *.

" This would be no greater exercise of power than the abolition of the right of distress for rent, or of the lien of the landlord on property taken in execution, or of the right of imprisoning the debtor. Yet the validity of such laws has been fully recognized even where they affected existing claims or judgments. They do not take away property, or affect the obligation of contracts, but simply affect legal remedies."

In Lewis' Sutherland on Statutory Construction (2d ed. § 283) it is said: " Rights depending on a statute and still inchoate, not perfected by a final judgment or reduced to possession, are lost by repeal or expiration of the statute." In section 284 of the same work, discussing the rule that the repeal of a statute will not operate to take away vested rights, it is said: " This is a principle of general jurisprudence; but a right to be within its protection must be a vested right. It must be something more than a mere expectation based upon an anticipated continuance of the existing law."

Since, therefore, in the case at bar the creditors had no rights

in the policies or their proceeds, except such as were given them by statute, and this statute having been repealed before any rights thereunder had become established by a final decree, the rights of the creditors were thereby lost. In so holding we are not unmindful of the provisions of sections 93 and 94 of the General Construction Law. In section 93 it is provided that the repeal of a statute shall not affect any right accruing, accrued or acquired prior to the taking effect of the repeal. This section, however, does not apply, because the rights of the plaintiff were not vested and section 93 of the General Construction Law applies only to vested rights. In *Matter of Wentworth* (230 N. Y. 176, 187) the court said: " A repealing statute which preserves rights contemplates definite and substantial ones which are, or are in the nature of, vested property rights and not mere inchoate personal privileges to which in a legal sense one has no indefeasible vested claim."

Section 94 of the General Construction Law provides that, unless otherwise specifically provided by law, all actions commenced under any provision of a statute so repealed, and pending immediately prior to the taking effect of the repeal, may be prosecuted and defended as if such provision were not repealed. This provision, however, is modified by section 110 of the General Construction Law, which reads as follows: " This chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter."

That the Legislature did not intend to except from the provisions of section 55-a of the Insurance Law cases in which actions had been instituted prior to the enactment, is shown, *first*, by the omission of a clause excepting existing actions, and *second*, by the provisions of section 55-a of the Insurance Law, which provide that the beneficiary of a policy, whether theretofore or thereafter issued, shall be entitled to its proceeds against the creditors and representatives of the insured. The purpose of the Legislature seems clear to take away from creditors such claims as had theretofore been given them by legislative grant in derogation of the rights of those for whose protection the policies were provided, and to substitute therefor a right to recover such amounts, with interest, as were taken from the estate of the decedent in fraud of creditors. As was said by Judge LEHMAN in *Chatham Phenix National Bank* v. *Crosney* (251 N. Y. 189, 196): " The debates in the Senate in regard to the new section leave no doubt that, at least in that branch of the Legislature, it was understood that the purpose and effect of the new section was to include in its

scope policies in favor of a wife upon the life of her husband, and to destroy any rights which the creditors would otherwise have to the portion of the insurance moneys purchased by excess of annual premiums above $500 paid out of the husband's estate."

It follows that the judgment appealed from should be reversed, with costs to the defendants, appellants, and the complaint dismissed, with costs.

DOWLING, P. J., concurs in result.

O'MALLEY, J. (concurring). For the reasons stated in my dissenting opinion on the former appeal (224 App. Div. 504, 506), I concur in the result.

MERRELL, J., dissents and votes for affirmance.

SHERMAN, J. (concurring). In concurring with the conclusion reached by Mr. Justice FINCH, I deem it proper to state the reasons which lead me to that result.

As appears from the prior prevailing opinion (224 App. Div. 504) the insurance policies were issued in Ohio when both the insured and his wife, the beneficiary (one of the appellants), resided there. Their subsequent residence in this State and the death here of Mr. Ruggles, leaving an insolvent estate, give rise to this action brought in behalf of his creditors.

Much of the argument deals with the effect of the enactment of section 55-a of the Insurance Law (as added by Laws of 1927, chap. 468). That it repealed by implication section 52 of the Domestic Relations Law is now settled. (*Chatham Phenix National Bank* v. *Crosney*, 251 N. Y. 189.) Assuming that the New York statute applies, the question is whether the rights of any party hereto have been affected thereby.

In my opinion they had accrued when Edwin D. Ruggles died in March, 1926, prior to the enactment in 1927 of that section of the Insurance Law. Upon his death, the defendant insurance company, having received due proofs of death, as found by the court at Special Term, was obligated to pay the amount of each policy to the individuals then entitled thereto. All rights thereunder had become fixed and the subsequent repeal of the statute could not deprive decedent's creditors of such rights, if any, as they then had to share in the insurance proceeds.

To hold otherwise would be in derogation of their property rights under the law as it then existed. How can they be deprived of their right to share in this property, except in contravention of article 1, section 10, of the Federal Constitution?

The learned Special Term found at the request of defendant Ruggles: "Under the law of the State of Ohio, the defendant

Mary B. Ruggles in the lifetime of her husband Edwin D. Ruggles, had a *vested* interest in the insurance policies issued by the defendant Northwestern Mutual Life Insurance Company and payable to her, and upon his death she was entitled, upon compliance with their terms, to receive and retain the proceeds or avails of said policies for her sole benefit, free from all debts of her said husband and from all claims of his creditors and of the plaintiff."

The Circuit Court of Appeals, Second Circuit (*Matter of Messinger*, 29 F. [2d] 158; certiorari denied, *sub nom. Reilly* v. *Messinger*, 279 U. S. 855, April 22, 1929), in considering the effect of this statute held (p. 161): "Section 55a of the State Insurance Law took effect March 31, 1927. It is unlikely that there were not creditors existing at that time, seeing that bankruptcy followed so soon after. To the creditors whose claims arose prior to the passage of the law, it would not apply. Not only is a retroactive statute which disturbs existing rights unlikely to have been intended, but a State law which deprives existing creditors of their rights to resort to property for payment of their claims would impair the obligation of contracts, and contravene section 10, article 1 of the Federal Constitution. *Bank of Minden* v. *Clement*, 256 U. S. 126, 41 S. Ct. 408, 65 L. Ed. 857; *Edwards* v. *Kearzey*, 96 U. S. 595, 24 L. Ed. 793; *Gunn* v. *Barry*, 15 Wall. 610, 21 L. Ed. 212. * * * Section 55a should be construed so as not to operate retroactively, and to affect only such claims as arose after March 31, 1927." To the same effect is *Matter of Sturdevant* (29 F. [2d] 795).

Nor do I agree that the newly-enacted statute (Insurance Law, § 55-a) may properly be construed to relate to the situation here present, for when that act became effective, the period of insurance had already expired. At the hour of that enactment, the insurance had terminated; the life of Ruggles was no longer insured. Therefore, the opening words of the act, viz.: "If a policy of insurance, whether heretofore or hereafter issued," must be held to relate, not to a matured policy whose life had ended, but to existing unmatured operative policies of insurance theretofore issued. The statutes touches contracts of insurance and not proceeds derived from an insurance coverage which had theretofore ceased to exist.

The creditors whose interests are represented by plaintiff own claims against the estate of Ruggles which had accrued in Ohio and in New York prior to Mr. Ruggles' death and during the years that section 52 of the Domestic Relations Law was in force. If under that statute these creditors held a valid claim to the proceeds of the policies payable upon Mr. Ruggles' death, nothing that has since transpired — certainly not the enactment of chapter 468 of the Laws of 1927 — can take it away.

*Stare decisis* is a salutary, but not inflexible, rule furthering the practical administration of justice. (*Rumsey* v. *New York & New England R. R. Co.*, 133 N. Y. 79, 85.) In a court of last resort it may be held controlling, though there " a manifest error in its former judgment" may be corrected. (*Cluff* v. *Day*, 141 N. Y. 580, 582.) Ordinarily a court may not treat a question as *res nova* which it had theretofore decided (*Leavitt* v. *Blatchford*, 17 N. Y. 521), but it was there stated to be the duty of the court " freely to examine its own decisions " and to correct error by overruling a prior decision (*Leavitt* v. *Blatchford, supra*, 533; *Rumsey* v. *New York & New England R. R. Co., supra*, 85). Here no contract has been made nor rights acquired in reliance upon the prior decision of this court. In view of the decision about to be made reversing the judgment and dismissing the complaint, and inasmuch as this is a court of intermediate appeal, I feel free to state my individual conclusion (which is not in harmony with the prior decision of this court) that each policy of insurance, being an Ohio contract entered into while Mr. and Mrs. Ruggles were residents of Ohio, was at no time subject to section 52 of the Domestic Relations Law. (*Ætna Life Ins. Co.* v. *Dunken*, 266 U. S. 389.) Each policy was an entire contract (*Washington Central Bank* v. *Hume*, 128 U. S. 195), and the beneficiary thereof could not be deprived of her right to receive the proceeds of the policy undiminished by the claims of her husband's creditors, inasmuch as the laws of Ohio forbade participation therein by creditors. Under the laws of Ohio, the widow (beneficiary) was entitled to the full proceeds. No enactment by the State of New York could validly impair that contract right. The change, from time to time, of the residence of an insured and the sending of premiums to pay for the insurance from one or another State, in which he might temporarily reside, when each State may have a different statute as to creditors' and widows' rights, surely ought not to affect the amount payable to the beneficiary under the laws of the State in which the contract of insurance was made and where it was to be performed.

For the above reasons I concur in the determination reached by Mr. Justice FINCH that the judgment appealed from should be reversed and the complaint dismissed.

Judgment reversed, with costs to defendants, appellants, and complaint dismissed, with costs. Settle order on notice, reversing findings inconsistent with this determination and containing such new findings of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.