850 COMPANY, Respondent, *v.* ADELE M. SCHWARTZ et al., Appellants.

First Department, June 25, 1964.

*Jack Newton Lerner* for appellants.

*Gerald Blum* of counsel (*Bergner & Bergner*, attorneys), for respondent.

*Per Curiam.* This proceeding was instituted in the Supreme Court on December 3, 1963, pursuant to the provisions of subdivision (c) of section 2 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd.), for a judgment declaring that the building at 850 Seventh Avenue, New York City, constituted " business space " and fixing the emergency rent for tenant occupied suites and units in the building, including those occupied by respondents-appellants. Shortly after the institution of the proceeding and on December 31, 1963, the law, by its terms, expired without the enactment of any specially applicable saving clause to preserve the rights of landlords and tenants or to continue the jurisdiction of the court to fix emergency rents.

Prior to March 1, 1952, the entire building was occupied for residential purposes and the units therein were controlled under applicable housing rent control regulations. Thereafter, a number of residential apartments in the building were altered for use for business purposes, and, prior to the commencement of this proceeding, over 60% (53 units) of the total rentable area (85 units) was occupied and used for such purposes. The statute fixed 60% as the minimum percentage to qualify the entire structure as " Business Space " (L. 1945, ch. 314, as amd. by L. 1952, ch. 417). It appears, however, that of 53 units occupied for business purposes, there were, at the commencement of the proceeding, 10 units (needed to make up the necessary 60%) which were still not formally decontrolled under the housing rent control regulations. Certificates of decontrol as to these 10 units were not issued until January 16, 1964, which was after the Emergency Business Space Rent Control Law had expired. Thereafter, and on March 5, 1964, Special Term rendered an order entertaining the proceeding, declaring that " prior to and on the commencement of this proceeding the space occupied by the respondents constituted and does constitute ' Business Space ' within the meaning of the Emergency Business Space Rent Control Law", fixing ad interim rents and setting down for hearing the issue as to reasonable rent. The appeal here is from this order.

The Emergency Business Space Rent Control Law was declared to be effective during the existence of public emergency in the matter of the rental of business space in a city of more than one million inhabitants (New York City). (Emergency Business Space Rent Control Law, § 1; L. 1945, ch. 314, § 1.) The Supreme Court was given the jurisdiction for the duration of such " emergency " to fix the " emergency rent ". (Emergency Business Space Rent Control Law, § 2, subd. [c].) The " emergency " as described in the law was originally declared to continue until July 1, 1946 (L. 1945, ch. 314, § 14), and thereafter from year to year was extended and finally declared by the Legislature in 1963 " to continue until December 31, 1963 ". (L. 1963, ch. 674, § 2.)

In determining that the emergency would terminate on December 31, 1963, the Legislature was well aware that this particular statute would end and pass entirely out of existence on said date. Presumably, it acted with deliberation and full knowledge of existing conditions (see 82 C. J. S., Statutes, § 316) and with knowledge that, as of the date of the expiration of the statute, there would then exist landlords and tenants who would have executory or inchoate rights thereunder and that there would then be pending actions or proceedings to perfect such rights. But the Legislature made no provision, in the nature of a saving clause, for the protection of such rights or the continuance of such actions or proceedings. Since no such provision was made, it must be presumed that the Legislature intended that the common-law rule should apply, namely, that " ' [r]ights depending on a statute and still inchoate, not perfected by a final judgment or reduced to possession, are lost by repeal or expiration of the statute.' " (*United States Mtge. & Trust Co.* v. *Ruggles*, 232 App. Div. 9, 13, quoting from Lewis' Sutherland, Statutory Construction [2d ed.], § 283.)

The petitioner was not possessed of any vested right which would survive the expiration of the statute. Its premises did not qualify as " business space " during the " emergency ". Sixty per centum of the total number of units formerly used as dwelling space in the building was not " lawfully occupied as business space " on a date prior to the expiration of the statute. (See Emergency Business Space Rent Control Law, § 2, subd. [a].) As aforenoted, it was not until January 16, 1964, that the petitioner obtained certificates from the local rent control office decontrolling as housing accommodations a number of the units necessary to meet the requirement for 60% lawful " business space " occupation. (See *Matter of Sipal Realty Corp.*

[*Dankers*], 8 A D 2d 355, mod. 8 N Y 2d 319.) In this case, the Court of Appeals agreed with this court on this particular point, stating (p. 323): "If the bare fact of the physical change in the character of the space is held to be the determinative factor, the landlord then will be substituted as the sole arbiter in place of the Administrator. Such a ruling would encourage precisely the evil which the rent legislation was designed to control."*

Petitioner's reliance on sections 93 and 94 of the General Construction Law is unavailing. Said sections, stated to apply in the case of the "repeal of a statute or part thereof", if applicable where a statute is expressly enacted for a limited period and expires by its terms (see 50 Am. Jur., Statutes, § 515), are effective generally to protect vested rights and to preserve the remedies for enforcement of such rights. (See *United States Mtge. & Trust Co.* v. *Ruggles, supra; Webster* v. *Town of White Plains,* 93 App. Div. 398.) But, here, the statute had expired before petitioner became entitled to an order fixing an emergency rent. Petitioner's rights and the jurisdiction of the court depend upon a statute which no longer has any existence. Petitioner did not acquire any vested right before the statute expired and, of course, the court, having no legislative powers, has no authority to extend the emergency or to revive the statute for the purpose of affording this petitioner relief to which it was not entitled at the time of the expiration of the statute.

The order, entered March 5, 1964, should be reversed and vacated, on the law, without costs, and the petition herein and this proceeding should be dismissed, without costs.

STEUER, J. (dissenting). The facts are as stated in the *Per Curiam* opinion.

The question presented is whether in a building in which over 60% of the apartments have been converted to business use but the Rent Administrator did not formally act on the application for decontrol until after the expiration date of the statute, the building is still subject to rent control. Under the statute it

---

* Former section 13 of the State Rent and Eviction Regulations, referred to in the opinions in this court and in the Court of Appeals in the *Sipal Realty Corp.* (*Dankers*) decision, was carried forward into section 13 of the Rent, Eviction and Rehabilitation Regulations of the City Rent and Rehabilitation Administration. Under the latter, effective on May 1, 1962, as well as under the former State regulations, housing accommodations continued to be subject to control as such until orders are issued by the City Rent and Rehabilitation Administrator exempting the same from the regulations, and the landlord may not collect more than the controlled residential rent until an exemption order is issued by such Administrator exempting the space during the period of occupancy by the tenant.

was the function of the Administrator to determine whether the conversion was bona fide. And until he did so the landlord could not collect rents based on the conversion (*Matter of Sipal Realty Corp.* [*Dankers*], 8 N Y 2d 319). While the determination of the Administrator is an essential, his issuance of a certificate is purely ministerial. The Court of Appeals in *Sipal* (*supra*) ruled that, where certificates were issued after the action was begun to fix the rents, the court should still entertain the action, the date of the certificates being a factor from which the date from which decontrolled rents would be collectible. The decision of this court dismissing the proceeding (8 A D 2d 355) was modified in this respect, thereby sustaining the position taken by VALENTE, J., dissenting: " The language of section 13 merely limits the amount of rent a landlord may collect, i.e., he may not collect any sum in excess of the maximum residential rent until the Administrator has issued an order exempting housing accommodations from the regulations " (p. 359).

The expiration of the statute does not make the conversion or the occupancy of the space unlawful. Nor should it operate to prevent the Administrator from acting on an application made before its expiration and from certifying to a condition that existed while the statute was in effect. Concededly the expiration of the statute does not change the situation in buildings where a certificate has been issued. And as the certificate is merely evidence that a bona fide conversion has been effected, it can still be issued in connection with a conversion which took place at a time when the statute was operative.

BREITEL, J. P., EAGER and STALEY, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents, in opinion in which VALENTE, J., concurs.

Order, entered on March 5, 1964, reversed on the law, without costs, the application denied, and the petition dismissed.